IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                       Plaintiff,<br><br>vs.<br><br>APRIL N. GRAVES,<br><br>                       Defendant. | Civil Action No: 8:24CV137<br><br>JURY TRIAL DEMANDED<br><br>COMPLAINT |

This is an action by the United States of America against April N. Graves, individually and d/b/a Aprils [sic] Unique Lingerie and Shoes, LLC; KayDoll Lashes; KayDoll Lashes and Women Fashion; Nelson and Graves Credit Counseling; April A1 Credit Business Services; and Aprils [sic] Unique Lingerie, to recover treble damages and civil penalties under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, and to recover money for common law or equitable causes of action for payment by mistake and unjust enrichment based upon April N. Graves; Aprils [sic] Unique Lingerie and Shoes, LLC; KayDoll Lashes; KayDoll Lashes and Women Fashion; Nelson and Graves Credit Counseling; April A1 Credit Business Services; and Aprils [sic] Unique Lingerie's receipt of Paycheck Protection Program funds to which she was not entitled.

## JURISDICTION AND VENUE

1. This action arises under the FCA and the common law.

2. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1345 because the United States is the Plaintiff. The Court also has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367(a).

3. The Court has personal jurisdiction over April N. Graves under 31 U.S.C. § 3732(a) because April N. Graves can be found, resides, or transacts business in this District, or has committed the alleged acts in this District.

Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) as April N. Graves can be found in this District and the subject transactions took place in the District of Nebraska.

## PARTIES

4. Plaintiff, United States of America, guarantees and funds certain loans, like the Paycheck Protection Program as more thoroughly described below, through the Small Business Administration ("SBA").

5. Defendant Graves, April N. Graves, individually and d/b/a Aprils [sic] Unique Lingerie and Shoes, LLC; KayDoll Lashes; KayDoll Lashes and Women Fashion; Nelson and Graves Credit Counseling; April A1 Credit Business Services; and Aprils [sic] Unique Lingerie, was located in Douglas County, Nebraska at the time of the loans, and purports to be a resident of Douglas County, at the filing of this civil action – both of which located within this District.

## THE PAYCHECK PROTECTION PROGRAM

6. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). The program was modified and extended thereafter.

7. To obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application

(SBA Form 2483), the small business (through its authorized representative) was required to provide, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses.

8. A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan and subsequent forgiveness process.

9. PPP loan proceeds were required to be used by the business on certain permissible expenses to include for example, payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

10. The application process to obtain a PPP loan required the eligible recipient to make the following good faith certifications and acknowledgments:

    a. That the applicant was eligible to receive a PPP loan under the rules in effect at the time the application was submitted (the "PPP Rules");

    b. That the uncertainty of current economic conditions made the loan request necessary to support the ongoing operations of the eligible recipient;

    c. That the applicant was in operation on February 15, 2020, had not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC;

d. That the funds would be used to retain workers and maintain payroll or make payments for mortgage interest, rent, utilities, or other covered costs under the PPP Rules;

e. That if the funds were knowingly used for unauthorized purposes, the federal government may find the individual legally liable for such charges as fraud;

f. That not more than 40 percent of the loan proceeds may be used for non-payroll costs;

g. That documentation verifying the number of full-time equivalent employees on payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities would be provided to the lender if required;

h. That the eligible recipient had not received and would not receive another loan under the Paycheck Protection Program;

i. That the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects;

j. That the applicant understood that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including:

   1. under 18 U.S.C. §§ 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000.00;

   2. under 15 U.S.C. § 645 by imprisonment of not more than two years and/or a fine of not more than $5,000.00; and

   3. if submitted to a federally insured institution, under 18 U.S.C. § 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.00;

k. That the lender would confirm the eligible loan amount using the documents submitted by the applicant.

## THE FALSE CLAIMS ACT

11. The FCA provides, in pertinent part, that any person who:

    a. knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

    b. knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

is liable to the United States for three times the amount of damages which the United States sustains, plus a civil penalty per violation. 31 U.S.C. § 3729(a)(1)(a) and (b).

12. FCA penalties are regularly adjusted for inflation, pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015. *See* 28 U.S.C. § 2461 note. For all FCA penalties assessed after February 12, 2024, whose associated violations occurred after November 2, 2015, the penalty range is $13,946.00 to $27,894.00 per violation. 28 C.F.R. § 85.5.

13. For purposes of the FCA, the terms "knowing" and "knowingly"

   a. Means that a person, with respect to information –

      1. has actual knowledge of the information;

      2. acts in deliberate ignorance of the truth or falsity of the information; or

      3. acts in reckless disregard of the truth of falsity of the information; and

   b. Require no proof of specific intent to defraud. 31 U.S.C. § 3729(b)(1).

14. Under the FCA, the term "claim" includes requests to the United States for payment, whether made directly or indirectly to the United States. *Id*. § 3729(b)(2)(A).

15. The FCA defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property. *Id*. § 3729(b)(4).

## ALLEGATIONS

16. It is a violation of the FCA to knowingly obtain a SBA-guaranteed PPP loan which is not supplied in compliance with the PPP Rules, and to subsequently obtain forgiveness of such loan.

17. Defendant Graves, individually and d/b/a Aprils [sic] Unique Lingerie and Shoes, LLC; KayDoll Lashes; KayDoll Lashes and Women Fashion; Nelson and Graves Credit Counseling; April A1 Credit Business Services; and Aprils [sic] Unique Lingerie, was involved in

applying for twelve (12) and obtaining eleven (11) PPP loans and subsequently involved in obtaining forgiveness of five (5) of the subject loans, in violation of the FCA.

18. On or about June 18, 2020, Defendant Graves, d/b/a Kaydoll Lashes and Womens Fashion, was approved and received a PPP loan ("Loan 1") in the amount of $13,541.00 based upon misrepresentations in a loan application submitted to an unnamed financial institution (Bank 1). Upon information and belief, in the PPP loan application, Defendant Graves misrepresented her annual income and payroll costs, which were used in calculating the maximum loan amount for which Defendant Graves was eligible. This misrepresentation caused Defendant Graves to receive loan proceeds well in excess of what she would be entitled, if any at all.

19. On or about June 26, 2020, Defendant Graves, d/b/a Aprils [sic] Unique Lingerie and Shoes, LLC, was approved and received a PPP loan ("Loan 2") in the amount of $20,832.00 based upon misrepresentations in a loan application submitted to an unnamed financial institution (Bank 2). Upon information and belief, in the PPP loan application, Defendant Graves misrepresented her annual income and payroll costs, which were used in calculating the maximum loan amount for which Defendant Graves was eligible. This misrepresentation caused Defendant Graves to receive loan proceeds well in excess of what she would be entitled, if any at all.

20. On or about June 26, 2020, Defendant Graves, d/b/a April A1 Credit Business Services, was approved and received a PPP loan ("Loan 3") in the amount of $17,145.00 based upon misrepresentations in a loan application submitted to an unnamed financial institution (Bank 3). Upon information and belief, in the PPP loan application, Defendant Graves misrepresented her annual income and payroll costs, which were used in calculating the maximum loan amount for which Defendant Graves was eligible. This misrepresentation caused Defendant Graves to receive loan proceeds well in excess of what she would be entitled, if any at all.

21. On or about July 17, 2020, Defendant Graves, d/b/a KayDoll Lashes, was approved and received a PPP loan ("Loan 4") in the amount of $13,937.00 based upon misrepresentations in a loan application submitted to Bank 3. Upon information and belief, in the PPP loan application, Defendant Graves misrepresented her annual income and payroll costs, which were used in calculating the maximum loan amount for which Defendant Graves was eligible. This misrepresentation caused Defendant Graves to receive loan proceeds well in excess of what she would be entitled, if any at all.

22. On or about August 6, 2020, Defendant Graves, d/b/a Nelson and Graves Credit Counseling, was approved and received a PPP loan ("Loan 5") in the amount of $37,500.00 based upon misrepresentations in a loan application submitted to Bank 3. Upon information and belief, in the PPP loan application, Defendant Graves misrepresented her annual income and payroll costs, which were used in calculating the maximum loan amount for which Defendant Graves was eligible. This misrepresentation caused Defendant Graves to receive loan proceeds well in excess of what she would be entitled, if any at all.

23. Defendant Graves, d/b/a April A1 Credit Business Services, applied for a PPP loan ("Loan 6") in the amount of $16,666.00. Upon information and belief, in the PPP loan application, Defendant Graves misrepresented her annual income and payroll costs, which were used in calculating the maximum loan amount for which Defendant Graves was eligible. Defendant Graves submitted the loan application to an unnamed financial institution (Bank 4). Upon information and belief, Defendant Graves requested that Bank 4 withdraw her application because Bank 4 would not issue payment in a timeframe satisfactory to Defendant Graves.

24. On or about March 1, 2021, Defendant Graves, d/b/a KayDoll Lashes, was approved and received a PPP loan ("Loan 7") in the amount of $18,384.00 based upon

misrepresentations in a loan application submitted to an unnamed financial institution (Bank 5). Upon information and belief, in the PPP loan application, Defendant Graves misrepresented her annual income and payroll costs, which were used in calculating the maximum loan amount for which Defendant Graves was eligible. This misrepresentation caused Defendant Graves to receive loan proceeds well in excess of what she would be entitled, if any at all.

25. On or about March 1, 2021, Defendant Graves, d/b/a Aprils [sic] Unique Lingerie, was approved and received a PPP loan ("Loan 8") in the amount of $19,257.00 based upon misrepresentations in a loan application submitted to an unnamed financial institution (Bank 5). Upon information and belief, in the PPP loan application, Defendant Graves misrepresented her annual income and payroll costs, which were used in calculating the maximum loan amount for which Defendant Graves was eligible. This misrepresentation caused Defendant Graves to receive loan proceeds well in excess of what she would be entitled, if any at all.

26. On or about March 1, 2021, Defendant Graves, individually and d/b/a KayDoll Lashes and Women Fashion, was approved and received a PPP loan ("Loan 9") in the amount of $12,241.47 based upon misrepresentations in a loan application submitted to an unnamed financial institution (Bank 6). Upon information and belief, in the PPP loan application, Defendant Graves misrepresented her annual income and payroll costs, which were used in calculating the maximum loan amount for which Defendant Graves was eligible. This misrepresentation caused Defendant Graves to receive loan proceeds well in excess of what she would be entitled, if any at all.

27. On or about June 30, 2021, Defendant Graves, d/b/a Aprils [sic] Unique Lingerie and Shoes, LLC, was approved and received a PPP loan ("Loan 10") in the amount of $13,481.70 based upon misrepresentations in a loan application submitted to an unnamed financial institution (Bank 7). Upon information and belief, in the PPP loan application, Defendant Graves

misrepresented her annual income and payroll costs, which were used in calculating the maximum loan amount for which Defendant Graves was eligible. This misrepresentation caused Defendant Graves to receive loan proceeds well in excess of what she would be entitled, if any at all.

28. On or about April 3, 2021, Defendant Graves, d/b/a Aprils [sic] Unique Lingerie, was approved and received a PPP loan ("Loan 11") in the amount of $19,257.00 based upon misrepresentations in a loan application submitted to Bank 5. Upon information and belief, in the PPP loan application, Defendant Graves misrepresented her annual income and payroll costs, which were used in calculating the maximum loan amount for which Defendant Graves was eligible. This misrepresentation caused Defendant Graves to receive loan proceeds well in excess of what she would be entitled, if any at all.

29. On or about May 25, 2021, Defendant Graves, individually, was approved and received a PPP loan ("Loan 12") in the amount of $4,791.67 based upon misrepresentations in a loan application submitted to an unnamed financial institution (Bank 8). Upon information and belief, in the PPP loan application, Defendant Graves misrepresented her annual income and payroll costs, which were used in calculating the maximum loan amount for which Defendant Graves was eligible. This misrepresentation caused Defendant Graves to receive loan proceeds well in excess of what she would be entitled, if any at all.

30. Defendant Graves applied for a total of $207,033.84 in loan proceeds and received a total of $190,367.84.

31. Defendant Graves knowingly used the PPP loan funds for unauthorized purposes beyond what was permitted by the terms of the loans and the statute.

32. Defendant Graves' businesses were not eligible to receive PPP loan funds. Defendant Graves' businesses were not in operation on February 15, 2020, as required by the PPP

Rules, and Defendant Graves attempted to incorporate some her businesses after having received PPP funds. The incorporations were simply a façade to give the appearance of valid business operations. Upon information and belief, Defendant Graves' businesses' operation statuses are listed below.

    a. <u>Aprils [sic] Unique Lingerie and Shoes, LLC ("Aprils")</u>

        1. Defendant Graves incorporated Aprils on February 21, 2007, with the Nebraska Secretary of State ("SOS"), and it became inactive/dissolved on June 2, 2009 for nonpayment of taxes. Aprils was inactive on the date Defendant Graves submitted its PPP loan application, and thus not in operations on or before February 15, 2020, as required by the PPP Rules, and was ineligible to receive funding.

    b. <u>KayDoll Lashes and Women Fashion ("KayDoll Lashes")</u>

        1. Defendant Graves was approved for a PPP loan for KayDoll Lashes on or about June 18, 2020. Defendant Graves incorporated KayDoll Lashes as a limited liability company with the SOS on December 7, 2020. The business was administratively dissolved on June 21, 2023 for failure to file the biennial report and pay fees. KayDoll Lashes was not in operation on or before February 15, 2020, as required by the PPP Rules, and was ineligible to receive funding.

    c. <u>KayDoll Lashes ("KayDoll")</u>

1. KayDoll has never been registered or incorporated with the SOS. The name of this business suggests that it is uniquely similar, if not the same business, as KayDoll Lashes. KayDoll was not in operation on or before February 15, 2020, as required by the PPP Rules, and was ineligible to receive funding.

d. <u>Nelson and Graves Credit Counseling ("Nelson and Graves")</u>

1. Defendant Graves was approved for a PPP loan for Nelson and Graves on or about August 6, 2020. Defendant Graves incorporated this business as a limited liability company with the SOS on March 18, 2021. Nelson and Graves was administratively dissolved on June 21, 2023, for failure to file the biennial report and pay fees. Nelson and Graves was not in operation on or before February 15, 2020, as required by the PPP Rules, and was ineligible to receive funding.

e. <u>April A1 Credit Business Services ("April A1")</u>

1. Defendant Graves was approved for a PPP loan for April A1 on or about June 26, 2020. Defendant Graves incorporated April A1 as a limited liability company with the SOS on February 12, 2021. The business was administratively dissolved on June 21, 2023 for failure to file the biennial report and pay fees. April A1 was not in operation on or before February 15, 2020, as required by the PPP Rules, and was ineligible to receive funding.

f. <u>Aprils [sic] Unique Lingerie ("Aprils Unique")</u>

1. Defendant Graves incorporated Aprils Unique as a limited liability company on January 29, 2021, with the SOS and it was administratively dissolved on June 21, 2023, for failure to file the biennial report and pay fees. Defendant Graves then applied for two PPP loans for this business. Aprils Unique was not in operation on or before February 15, 2020, as required by the PPP Rules, and was ineligible to receive funding.

g. <u>April Graves, sole proprietorship</u>

1. Defendant Graves applied for two PPP loans stating that she was a sole proprietor and used the name of "KayDoll Lashes and Women Fashion" for her business. These loans were approved in March and May of 2021. Upon information and belief, Defendant Graves was not operating a business on or before February 15, 2020, as required by the PPP Rules, and was ineligible to receive funding.

33. Defendant Graves knowingly misrepresented her use of the funds on the forgiveness applications submitted for five (5) of the PPP loans. Based upon the false representations, the SBA forgave Loans 1, 4, 7, 8, and 10 in the total amount of $78,600.70.

34. The SBA paid a total of $22,543.59 in processing fees in connection with the PPP loans disbursed to Defendant Graves, Aprils [sic] Unique Lingerie and Shoes, LLC; KayDoll Lashes; KayDoll Lashes and Women Fashion; Nelson and Graves Credit Counseling; April A1 Credit Business Services; and Aprils [sic] Unique Lingerie. Processing fees were paid to each bank as identified below:

a. Bank 1 - $677.05

      b. Bank 2 - $1,041.60

      c. Bank 3 - $3,429.10

      d. Bank 4 - $2,500.00

      e. Bank 5 - $7,500.00

      f. Bank 6 - $2,500.00

      g. Bank 7 - $2,500.00

      h. Bank 8 - $2,395.84

35. False statements and documents were submitted to Bank 1, Bank 2, Bank 3, Bank 4, Bank 5, Bank 6, Bank 7, and Bank 8 which misrepresented the amount of eligible payroll for Defendant Graves' use of the loan proceeds. The false statements in the loan applications and forgiveness applications were material to the payment of money by Bank 1, Bank 2, Bank 3, Bank 4, Bank 5, Bank 6, Bank 7, and Bank 8 that was then reimbursed by the SBA, causing damages to the United States.

The United States realleges and incorporates all paragraphs above of this Complaint as fully set forth herein in all Counts listed below:

### COUNT 1

### False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
### Presenting or Causing False Claims to be Presented for Payment

36. Defendant Graves knowingly requested twelve (12) and received eleven (11) PPP loans for an amount she was not entitled to, in violation of the PPP Rules.

37. Defendant Graves knowingly requested and received forgiveness of five (5) of those loans, despite her failure to comply with the PPP Rules.

38. By virtue of these false claims, the United States was damaged for the full amount of the PPP loans and the processing fees paid to Bank 1, Bank 2, Bank 3, Bank 4, Bank 5, Bank 6,

Bank 7, and Bank 8, plus any other costs or interests, and is entitled to treble damages under the FCA, plus civil penalties for each violation.

## COUNT II

### False Claims Act, 31 U.S.C. § 3729(a)(1)(B)
### Making or Using False Records or Statements

39. Defendant Graves knowingly submitted twelve (12) PPP loan applications that contained misrepresentations regarding her payroll costs and intended use of PPP funds.

40. Defendant Graves subsequently knowingly submitted PPP forgiveness applications that misrepresented her use of the PPP funds and eligibility for loan forgiveness.

41. By virtue of these false statements, the United States was damaged for the full amount of the loans and the processing fees paid to Bank 1, Bank 2, Bank 3, Bank 4, Bank 5, Bank 6, Bank 7, and Bank 8, plus any other costs or interest, and is entitled to treble damages under the FCA, plus civil penalties for each violation.

## COUNT III

### Unjust Enrichment

42. This is a claim for the recovery of monies by which Defendant Graves has been unjustly enriched.

43. By obtaining from the United States, through Bank 1, Bank 2, Bank 3, Bank 5, Bank 6, Bank 7, and Bank 8, funds to which she was not entitled, Defendant Graves was unjustly enriched and the United States is entitled to damages in an amount of $190,367.84, plus loan processing fees, plus interest, together with any other damages to be determined at trial.

## COUNT IV

### Payment by Mistake

44. This is a claim for the recovery of monies the United States paid directly or indirectly to Defendant as a result of mistaken understandings of fact.

45. The United States' mistaken understandings of fact were material to its decision to approve and then forgive the PPP loans provided by Defendant.

46. The United States, acting in reasonable reliance on the truthfulness of the statements contained in the PPP loan applications, approved the loans to Defendant Graves to which she was not entitled.

47. The United States, acting in reasonable reliance on the truthfulness of the statements contained in the PPP loan forgiveness applications, forgave the PPP loans where they were not eligible for forgiveness.

48. Thus, the United States is entitled to recoup an amount of no less than $832,632.79 ($571,103.52 – treble damages, $1,903.68 – 1% interest on PPP loan distribution, $22,543.59 – lender processing fees, and $237,082.00 – minimum penalty for 17 violations) for the amount of the PPP loans, plus any other amounts to be determined at trial.

**PRAYER FOR RELIEF AND JURY DEMAND**

The United States requests that the Court enter judgment against April N. Graves and grant the following relief:

    a. On Counts I and II (False Claims Act), awarding the United States treble the damages it sustained for (1) the $190,367.84 in loans plus one percent interest applied from the date of the loans and (2) the processing fees paid by the United States to Bank 1, Bank 2, Bank 3, Bank 4, Bank 5, Bank 6, Bank 7, and Bank 8, together with the maximum civil penalties allowed by law;

    b. On Count III (Unjust Enrichment), awarding the United States the amount by which Defendant was unjustly enriched;

    c. On Court IV (Payment by Mistake), awarding the United States the amount mistakenly paid to Defendant;

    d. Awarding the United State pre- and post-judgment interest, costs, and filing fees; and

    e. Granting such other relief as the Court may deem just and proper.

The United States further demands a trial by jury of all issues so triable pursuant to Fed. Rule Civ. P. 38.

Respectfully submitted this 17th day of April, 2024.

                      UNITED STATES OF AMERICA, Plaintiff

                      SUSAN T. LEHR
                      United States Attorney
                      District of Nebraska

                      By:    s/ Shereece Dendy-Sanders
                             SHEREECE DENDY-SANDERS, #24638
                             Assistant U.S. Attorney
                             1620 Dodge Street, Suite 1400
                             Omaha, NE 68102-1506
                             Tel: (402) 661-3700
                             Fax: (402) 661-3081
                             Email: shereece.dendy-sanders@usdoj.gov